IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENAS ISSUED TO FEDERAL RESERVE BANK OF NEW YORK AND THE CLEARING HOUSE PAYMENTS COMPANY LLC, <br><br> KINGDOM OF SPAIN, <br><br> *Petitioner*, <br><br> v. <br><br> BLASKET RENEWABLE INVESTMENTS LLC, <br><br> *Respondent*. | Misc. No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF THE KINGDOM OF SPAIN'S MOTION TO QUASH NON-PARTY SUBPOENAS**

CURTIS, MALLET-PREVOST,
 COLT & MOSLE, LLP

Joseph D. Pizzurro
Juan O. Perla
Grace Condro
David V. Holmes
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
jperla@curtis.com
gcondro@curtis.com
dholmes@curtis.com

*Attorneys for Petitioner the Kingdom of Spain*

January 2, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND .....................................................................................................................2

REASONS FOR QUASHING OR MODIFYING THE SUBPOENAS .........................................3

    I.    Spain's Assets Are Immune From Any Enforcement Efforts Until Blasket Obtains a Determination that a Reasonable Period of Time Has Elapsed Under Section 1610(c) ...............................................................................................4

    II.    The Subpoenas Seek Information Outside the Permissible Bounds of Post-Judgment Discovery Under the Federal Rules...........................................................5

CONCLUSION.......................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Af-Cap Inc. v. Republic of Congo*,
  383 F.3d 361 (5th Cir. 2004) ............................................................................................. 9

*Aurelius Cap. Partners v. Republic of Argentina*,
  No. 07-cv-11327, 2013 U.S. Dist. LEXIS 32459 (S.D.N.Y. Mar. 7, 2013) ....................... 3, 6, 8

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
  499 F.3d 737 (7th Cir. 2007) ............................................................................................. 9

*Blaw Knox Corp. v. AMR Industries, Inc.*,
  130 F.R.D. 400 (E.D. Wis. 1990) ...................................................................................... 6

*Conn. Bank of Commerce v. Republic of Congo*,
  309 F.3d 240(5th Cir. 2002) .............................................................................................. 9

*Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*,
  19 Civ. 11018 (AT), 2024 U.S. Dist. LEXIS 226104 (S.D.N.Y. Dec. 12, 2024) ..................... 4

*De Letelier v. Republic of Chile*,
  748 F.2d 790 (2d Cir. 1984) .............................................................................................. 9

*De Sousa v. Embassy of Angl.*,
  229 F. Supp. 3d 23 (D.D.C. 2017) ..................................................................................... 4

*EM Ltd. v. Banco Cent. de la República Argentina*,
  800 F.3d 78 (2d Cir. 2015) ................................................................................................ 7

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012) .............................................................................................. 6

*Esso Expl. & Prod. Nig. v. Nigerian Nat'l Petroleum Corp.*,
  No. 14cv8445, 2017 U.S. Dist. LEXIS 130100 (S.D.N.Y. Aug. 15, 2017) ......................... 5

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*,
  462 U.S. 611 (1983) ........................................................................................................... 7

*Gater Assets Ltd. v. Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ................................................................................................... 7

*GMA Accessories, Inc. v. Elec. Wonderland, Inc.*,
  No. 07-civ-3219, 2012 U.S. Dist. LEXIS 72897 (S.D.N.Y. May 22, 2012) ....................... 6

*In re Shagang Shipping Co.*,
  2014 U.S. Dist. LEXIS 59313 (S.D.N.Y. Apr. 28, 2014) ................................................... 5

*Kensington Intern. Ltd. v. Republic of Congo*,
    461 F.3d 238 (2d Cir. 2006) ................................................................................................ 9

*Magnaleasing, Inc. v. Staten Island Mall*,
    76 F.R.D. 559 (S.D.N.Y 1977) ............................................................................................ 6

*Micula v. The Government of Romania*,
    No. 15-mc-00107 (S.D.N.Y Sept. 16, 2015) ....................................................................... 5

*NML Capital, Ltd. v. Republic of Argentina*,
    No. 03-cv-8845 (S.D.N.Y. 2003) ......................................................................................... 5

*Olympic Chartering S.A. v. Ministry of Indus. & Trade of Jordan*,
    134 F. Supp. 2d 528 (2001) ................................................................................................. 7

*Republic of Argentina v. NML Capital, Ltd.*,
    573 U.S. 134 (2014) ............................................................................................................ 6

*S & S Mach. Co. v. Masinexportimport*,
    706 F.2d 411 (2d Cir. 1983) ................................................................................................ 4

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ............................................................................................................ 9

*Sci. Applications Int'l Corp. v. Hellenic Republic*,
    No. 18 Misc. 327, 2019 U.S. Dist. LEXIS 69675 (S.D.N.Y. Apr. 24, 2019) ..................... 4

*Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*,
    650 F. Supp. 3d 199 (S.D.N.Y. 2023) ................................................................................. 3

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ............................................................................................................ 6

*Urkaine v. PAO Tatneft*,
    Nos. 21-mc-376 (JGK)(SN), 22-mc-36 (JGK)(SN) (S.D.N.Y. Dec. 20, 2024) .................. 9

*Walters v. People's Republic of China*,
    672 F. Supp. 2d 573 (S.D.N.Y. 2009) ................................................................................. 8

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) ................................................................................................ 7

**Statutes**

28 U.S.C. § 1603(b) .................................................................................................................... 7

28 U.S.C. § 1609 ......................................................................................................................... 1

28 U.S.C. § 1610(c) ............................................................................................................ 1, 4, 5

28 U.S.C. § 1610(d) ........................................................................................................... 1, 4

28 U.S.C. § 1963 ..................................................................................................................... 2

Fed. R. Civ. P. 26(b) ..................................................................................................... 1, 6, 8

Fed. R. Civ. P. 45(d)(3) ....................................................................................................... 1, 3

Fed. R. Civ. P. 69(a)(2) ................................................................................................ 1, 3, 4, 6

**Other Authorities**

Convention on the Settlement of Investment Disputes between States and Nationals of
  Other States, 575 UNTS 159, entered into force October 14, 1966 ...................................... 2, 10

Pursuant to Federal Rules of Civil Procedure 26(b), 69(a)(2) and 45(d)(3) and the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1609 and 1610(c)-(d), Petitioner the Kingdom of Spain respectfully submits this memorandum of law in support of its motion to quash or modify the non-party subpoenas issued by Respondent Blasket Renewable Investments LLC to the Federal Reserve Bank of New York ("Federal Reserve") and The Clearing House Payments Company LLC ("Clearing House") on December 19, 2024.

## PRELIMINARY STATEMENT

Blasket's subpoenas were issued in connection with an action to enforce an arbitral award against Spain that is pending in the U.S. District Court for the District of Columbia (the "D.C. District Court"). The D.C. District Court entered judgment on the award on November 15, 2024, and an appeal of that judgment is pending in the D.C. Circuit. Because Spain is a foreign state, the FSIA governs any efforts to enforce the judgment.

Under the FSIA, sections 1609 and 1610(d), Spain's assets are absolutely immune from attachment and execution and no post-judgment enforcement efforts may commence unless and until the D.C. District Court has determined that "a reasonable period of time has elapsed following the entry of judgment" pursuant to section 1610(c). Because Blasket has not yet complied with that requirement, all of Spain's assets are still shielded by pre-judgment immunity and Blasket is not entitled to commence any post-judgment discovery of Spain's assets under Rule 69. Therefore, the subpoenas are invalid *ab initio* and should be quashed.

Additionally, even if Blasket could overcome the FSIA's requirements, the subpoenas should still be quashed or modified because they are overly broad and disproportionate to the needs of the case and contravene fundamental comity principles. For instance, the subpoenas seek irrelevant private information about the assets of more than 60 non-debtors, namely legally separate agencies or instrumentalities of Spain and individually named government officials. The

subpoenas also improperly target information about Spain's assets outside the United States, which is irrelevant because a U.S. court may only attach and execute on assets in the United States. Therefore, the subpoenas should be quashed or modified.

## BACKGROUND

On November 9, 2021, an arbitral award was rendered against Spain in favor of JGC Holdings Corporation under the Convention on Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). ECF No. 1-1.[1] On September 15, 2023, JGC filed a petition in the D.C. District Court to enforce the award. ECF No. 1. On February 13, 2024, Spain moved to dismiss the petition. ECF No. 13. While Spain's motion was pending, the parties stipulated to substitute Blasket for JGC as petitioner, subject to Spain's reservation of rights. ECF No. 18.

On September 26, 2024, the D.C. District Court denied Spain's motion to dismiss, which the Court converted *sua sponte* into a summary judgment motion, and granted summary judgment enforcing the award. ECF No. 24.

On November 15, 2024, the D.C. District Court entered judgment. ECF No. 28. Spain's appeals of that judgment and all orders giving rise to that judgment are currently pending in the D.C. Circuit. Appeal Nos. 24-7166, 24-7182. As of the date of this filing, Blasket has not moved for leave to commence enforcement of the judgment under the FSIA, section 1610(c). Nor has it sought leave to register and enforce the judgment outside of the District of Columbia, which is a requirement when, as here, an appeal of the judgment is pending. 28 U.S.C. § 1963.

---

[1] All references to "ECF No. __" are to the docket in the underlying D.C. District Court case *Blasket Renewable Investments, LLC v. Kingdom of Spain*, No. 23-cv-2701.

2

On December 19, 2024, Blasket notified Spain that it intended to issue subpoenas to the Federal Reserve and Clearing House seeking information about assets belonging to Spain and other entities and individuals in aid of executing the judgment pursuant to Federal Rules 69(a)(2) and 45. *See* Exhibits B and C, Declaration of Juan Perla, filed concurrently herewith ("Perla Decl."). The return date on the subpoenas is January 2, 2025. Spain now moves to quash or modify the subpoenas.

### REASONS FOR QUASHING OR MODIFYING THE SUBPOENAS

Rule 45(d)(3) requires that the Court quash or modify a subpoena that, among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). A party may seek to quash a third-party subpoena where the party "is seeking to protect a personal privilege or rights," including where the movant has "a real interest" in the information at issue. *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023). In cases where a party has a confidentiality interest in information sought through subpoenas, that party has standing to challenge whether the information sought is relevant and proportional to the needs of the dispute. *See, e.g., id.* at 203; *Aurelius Cap. Partners v. Republic of Argentina*, No. 07-cv-11327, 2013 U.S. Dist. LEXIS 32459, at *24 (S.D.N.Y. Mar. 7, 2013) ("Because the subpoenas served on the non-party banks seek information about the Republic's financial affairs, the Republic has standing . . . on the grounds that the document requests are excessively broad and seek irrelevant private information.").

Here, the subpoenas should be quashed because they infringe on the pre-judgment immunity of Spain's assets or are otherwise procedurally improper under the FSIA. In addition, the subpoenas are excessively broad and disproportionate to the needs of the case because,

3

among other reasons, they seek irrelevant private information about assets belonging to non-debtors and irrelevant information about Spain's assets outside the United States.

I. **Spain's Assets Are Immune From Any Enforcement Efforts Until Blasket Obtains a Determination that a Reasonable Period of Time Has Elapsed Under Section 1610(c)**

Under section 1610(d)(1), assets of a foreign sovereign are absolutely immune from pre-judgment attachment and execution in the absence of an explicit waiver of this pre-judgment immunity, which must be clear and unambiguous. *See S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 416 (2d Cir. 1983); *De Sousa v. Embassy of Angl.*, 229 F. Supp. 3d 23, 28 (D.D.C. 2017). No such waiver exists here. This pre-judgment asset immunity extends until a court has determined that "a reasonable period of time has elapsed following the entry of judgment" under section 1610(c). *See Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*, 19 Civ. 11018 (AT), 2024 U.S. Dist. LEXIS 226104, *3 (S.D.N.Y. Dec. 12, 2024).

Only a court where the judgment was rendered or was duly registered may issue a section 1610(c) order. *See Sci. Applications Int'l Corp. v. Hellenic Republic*, No. 18 Misc. 327, 2019 U.S. Dist. LEXIS 69675, at *4 (S.D.N.Y. Apr. 24, 2019) (issuing a section 1610(c) order after the judgment had been registered pursuant to section 1963). Blasket has not obtained leave from the D.C. District Court to register the judgment outside of the District of Columbia, as it is required to do under section 1963 while an appeal of the judgment is pending. 28 U.S.C. § 1963. Therefore, the D.C. District Court is the only court that may issue a section 1610(c) order at this time. Blasket has not sought, let alone obtained, any such order, and so Spain's assets are still protected by pre-judgment immunity under section 1610(d) and the action in the D.C. District Court remains procedurally in the pre-judgment phase under section 1610(c).

Rule 69(a)(2) provides only for discovery "in aid of the judgment or execution," meaning post-judgment discovery. Fed. R. Civ. P. 69(a)(2). Since Spain's assets are still protected by pre-

4

judgment immunity and the case remains procedurally in the pre-judgment phase, post-judgment discovery of Spain's assets is unavailable at this time. *See* Telephone Conference Transcript at 2:9-13; 4:5-10, *Micula v. The Government of Romania*, No. 15-mc-00107 (S.D.N.Y Sept. 16, 2015), Dkt. No. 83 ("[P]etitioners seek permission to begin identifying Romanian assets that may be subject to attachment or execution in this jurisdiction. One of several steps to beginning such proceedings is a ruling as to whether a reasonable time has passed following the entry of judgment") [attached as Exhibit D to the Perla Decl.]. If such discovery were permitted, it would be an infringement of the pre-judgment immunity accorded to Spain's assets under the FSIA.[2]

In sum, these subpoenas are invalid *ab initio* or premature under the FSIA and should be quashed.

## II. The Subpoenas Seek Information Outside the Permissible Bounds of Post-Judgment Discovery Under the Federal Rules

In addition to the constraints imposed by the FSIA, the Supreme Court has recognized that "other sources of law ordinarily will bear on the propriety of discovery requests" involving a foreign sovereign's assets, "such as settled doctrines of privilege and the discretionary determination by the district court whether the discovery is warranted, which may appropriately

---

[2] The Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014), is not to the contrary, because that case involved explicit waivers of pre-judgment asset immunity, and post-judgment discovery was sought after a section 1610(c) order had been issued. *See* Orders Granting Attachment Pursuant to Section 1610(c), *NML Capital, Ltd. v. Republic of Argentina*, No. 03-cv-8845 (S.D.N.Y. 2003), Dkt. Nos. 44, 405. However, to the extent *NML* can be read to hold that there is no immunity from asset discovery at any phase, Blasket's subpoena for post-judgment discovery under Rule 69 would still be improper while the action in the D.C. District Court remains in the pre-judgment phase under section 1610(c). *See Esso Expl. & Prod. Nig. v. Nigerian Nat'l Petroleum Corp.*, No. 14cv8445, 2017 U.S. Dist. LEXIS 130100, at *13 (S.D.N.Y. Aug. 15, 2017) (denying asset discovery where the case was still in a pre-judgment procedural posture); *In re Shagang Shipping Co.*, 2014 U.S. Dist. LEXIS 59313, at *6 (S.D.N.Y. Apr. 28, 2014) (quashing subpoenas seeking information about assets while the pending proceeding was "still in the merits phase of the action").

consider comity interests and the burden that the discovery might cause to the foreign state." *NML*, 573 U.S. at 146 n.6 (internal quotations omitted); *see EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("*EML*") ("[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." (citing Fed. R. Civ. P. 26(b)(2))). Indeed, courts determining the appropriate scope of discovery should account for "the demands of comity in suits involving foreign states," providing "due respect for . . . any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).

Thus, the subpoenas should also be quashed or modified because they are "excessively broad," seek irrelevant information and are disproportionate to the needs of the case. *Aurelius*, 2013 U.S. Dist. LEXIS 32459, at *24; *see NML*, 573 U.S. at 144 ("[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." (citing Fed. R. Civ. P. 26(b)(1))); *EML*, 695 F.3d at 202 ("The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment.").

### A. Agencies or Instrumentalities of Spain and Spanish Government Officials Are Non-Debtors and Should Not Be Subjected to Discovery of Their Assets

Courts agree that disclosure of assets of a non-debtor is generally not contemplated in discovery provided under Rule 69. *See GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07-civ-3219, 2012 U.S. Dist. LEXIS 72897, at *14 (S.D.N.Y. May 22, 2012) (citing *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561-62 (S.D.N.Y 1977)); *Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. 400, 403 (E.D. Wis. 1990) ("[A] judgment creditor must make a threshold showing of necessity and relevance when attempting to obtain discovery of a non-judgment debtor pursuant to Rule 69(a). The interest of third parties in their privacy must be balanced against the need of the judgment creditor to the documents in question.").

Here, the subpoenas define "Spain" to include any "agency or instrumentality" of Spain "as that term is defined at 28 U.S.C. § 1603(b)," including six specifically named entities.[3] Perla Decl., Ex. B at 3 and Ex. C at 3. The definition also includes a supposedly "non-exhaustive list of persons," which identifies 28 government officials by office and name without specifying whether they are being identified only with respect to their office or also in their personal capacity. Perla Decl., Ex. B at 9 and Ex. C at 9. None of these entities or individuals are judgment debtors in this case, nor have they been found liable for the judgment against Spain.

As Blasket itself acknowledges in the subpoenas, an "agency or instrumentality of a foreign state" is, by definition, a separate legal person under the FSIA. 28 U.S.C. § 1603(b)(1). And, under the Supreme Court's decision in *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), they are entitled to a "strong" presumption of separateness and to their own sovereign immunity under the FSIA. *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021) (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 252 (2d Cir. 2000)); *see also EM Ltd. v. Banco Cent. de la República Argentina*, 800 F.3d 78, 89 (2d Cir. 2015). There is no indication that Blasket has served these legally separate entities or even notified them of these subpoenas, and yet, the potential disclosure of information about their assets presents jurisdictional issues for this Court. *See*, *e.g.*, *Olympic Chartering S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 531 (2001) (quashing subpoena that sought information about assets belonging to third-party, non-debtor central bank for failure to overcome central bank's jurisdictional immunity).

---

[3] The agencies or instrumentalities listed in the subpoenas are: Sociedad Estatal de Participaciones Industriales, Instituto Cervantes, RENFE Operadora or RENFE of America LLC, Ingeniería y Economía del Transporte, S.M.E. M.P., S.A., ENAIRE, Paradores de Turismo de España, S.A. *See* Perla Decl. Ex. B at 3 and Ex. C at 3.

In essence, this definition of "Spain" is so expansive that it could even require the disclosure of information pertaining to the personal assets and financial transactions of government officials that bear no connection to Spain's assets. *See Aurelius*, 2013 U.S. Dist. LEXIS 32459, at *27 (holding that subpoena was overbroad and not appropriately "tailored to seek only information regarding assets that could realistically be seized by plaintiffs" based on its expansive definition of "Argentina"). Moreover, given that this case involves a judgment of about $36 million, such an expansive subpoena, which could capture large amounts of irrelevant private information, is disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1) (proportionality should be assessed in light of "the amount in controversy").

Therefore, the subpoenas should be quashed to the extent they seek information about non-debtors, or modified to narrow the scope of the definition of Spain to include only the Government of Spain.

### B. Principles of Proportionality and Comity Caution Against Overly Broad, Irrelevant Discovery Pertaining to Spain's Assets

Blasket's subpoenas are also disproportionate to the needs of the case even with respect to Spain's assets. The subpoenas as drafted could cover information regarding Spain's assets both in and outside of the United States, as they request information for every account associated with Blasket's broad definition of Spain, without any geographic limitations. That vague description is certainly intended to capture information about Spain's assets worldwide. Indeed, Blasket has made similarly expansive discovery requests of Spain explicitly for assets located in 14 different countries. Perla Decl., Ex. A at 7.

Courts in the United States may only attach and execute on assets in the United States under the FSIA or otherwise. *See Walters v. People's Republic of China*, 672 F. Supp. 2d 573, 574 (S.D.N.Y. 2009) (citing *Kensington Intern. Ltd. v. Republic of Congo*, 461 F.3d 238, 243 (2d

8

Cir. 2006)); *accord Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 367 (5th Cir. 2004) ("[U]nder § 1610(a) of the FSIA, a court is prohibited from executing against the property of a foreign state unless that property is . . . in the United States."); *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007) ("The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world."); *see also Samantar v. Yousuf*, 560 U.S. 305, 324 (2010) ("Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law."); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 252 (5th Cir. 2002) ("Congress intended to lift immunity from execution only 'in part,'" and "did not intend to reverse completely the historical and international antipathy to executing against a foreign state's property even in cases where a judgment could be had on the merits." (quoting *De Letelier v. Republic of Chile*, 748 F.2d 790, 799 (2d Cir. 1984)).

Authorizing discovery of information pertaining to assets located outside the United States would yield irrelevant information and be unnecessarily intrusive. It would also undermine the interests of comity. Blasket's subpoenas risk exposing confidential and sensitive information about Spain's financial affairs such as information about diplomatic activities— information that would serve no other purpose than to burden and harass Spain. The U.S. government would certainly not want to be subjected to that sort of sweeping intrusion into its financial affairs in foreign courts. *See* Statement of Interest of the United States of America at 13, *Ukraine v. PAO Tatneft*, Nos. 21-mc-376 (JGK)(SN), 22-mc-36 (JGK)(SN) (S.D.N.Y Dec. 20, 2024), Dkt. No. 103 ("The United States has a substantial interest in ensuring that post-judgment discovery into a foreign state's property carefully adheres to basic principles of relevance and is sensitive to comity, reciprocity, and foreign relations concerns.") [attached as

9

Exhibit E to the Perla Decl.]. Again, given the size of the judgment (about $36 million), it would be disproportionate to permit disclosure of information pertaining to Spain's assets worldwide, when information limited to the United States could suffice.

Additionally, Blasket seeks information concerning Spain's financial affairs generally, including information regarding Spain's liabilities such as credit reports and payments to third parties. Perla Decl. Ex. B at 7-8; Ex. C at 7-8. These broads requests could lead to the production of an outsized amount of confidential and potentially sensitive information about Spain's financial affairs for no justifiable reason, since information about liabilities does not pertain to executable assets. The subpoenas also ask for information about financial transactions in excess of $500. Perla Decl. Ex. B at 7-8; Ex. C at 7-8. That threshold amount is far too small to be reasonable relative to a judgment of more than $36 million, as it could result in the disclosure of a disproportionately large amount of irrelevant confidential information that is unlikely to lead to the discovery of assets large enough to satisfy a judgment of this size.

Lastly, the temporal scope of the subpoenas is also excessive. The subpoenas request information from the time when the ICSID award was rendered on November 9, 2021. However, Blasket did not obtain a U.S. judgment on the award until November 15, 2024, and has no right to enforce the award in the U.S. until it obtains a section 1610(c) order. Therefore, the timeframe for the information requested should start to run as of the date when it obtains such an order or at least as of the date the judgment was entered. Furthermore, pursuant to Article 52 of the ICSID Convention, enforcement of the award was automatically stayed when Spain filed its application to annul the award. That stay was lifted on November 23, 2022. Since Blasket had no right to enforce the award while the ICSID stay was in force, the timeframe for the information requested should begin, at the earliest, from the date when the stay was lifted, *i.e.*, November 23, 2022.

## CONCLUSION

For the foregoing reasons, this Court should quash or modify Blasket's subpoenas to the Federal Reserve and Clearing House.

Dated: January 2, 2025

                                                     Respectfully submitted,

                                                     CURTIS, MALLET-PREVOST,
                                                   COLT & MOSLE LLP

                                                 */s/ Joseph D. Pizzurro*
                                                 Joseph D. Pizzurro
                                                 Juan O. Perla
                                                 Grace Condro
                                                 David V. Holmes
                                                 101 Park Avenue
                                                 New York, NY 10178
                                                 (212) 696-6000
                                                 jpizzurro@curtis.com
                                                 jperla@curtis.com
                                                 gcondro@curtis.com
                                                 dholmes@curtis.com
                                                 *Attorneys for Petitioner the Kingdom of Spain*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I hereby certify that this memorandum of law contains 3,638 words as calculated by the word-processing program, exclusive of caption and signature block, which is in compliance with Local Civil Rule 7.1(c) of the Southern District of New York.

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document, along with the notice of motion and accompanying declaration and exhibits, to be mailed to counsel for Respondent Blasket Renewable Investments LLC at the address below.

Matthew D. McGill
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036

                                               */s /Joseph D. Pizzurro*
                                               Joseph D. Pizzurro

Dated: January 2, 2025