**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Kingdom of Spain,

    *Petitioner*,

v.

Blasket Renewable Investments LLC,

    *Respondent*.

Case No. 1:25-mc-00008

**RESPONDENT'S OPPOSITION TO MOTION TO QUASH SUBPOENAS**

GIBSON, DUNN & CRUTCHER LLP

Matthew D. McGill
mmcgill@gibsondunn.com
Matthew S. Rozen (*pro hac vice forthcoming*)
mrozen@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Blasket Renewable Investments LLC*

January 16, 2025

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD ............................................................................................. 4

ARGUMENT .......................................................................................................... 5

    I.  Blasket's Subpoenas Are Timely ................................................................... 5

    II. The Subpoenas Are Well Within The Permissible Scope Of Post-Judgment Discovery ... 9

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
    798 F. Supp. 2d 260 (D.D.C. 2011) ................................................................................7

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
    589 F. App'x 16 (2d Cir. 2014) ..............................................................................7, 12

*Blasket Renewable Invs., LLC v. Kingdom of Spain*,
    2024 WL 4298808 (D.D.C. Sept. 26, 2024) ........................................................2, 6

*Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*,
    942 F.3d 106 (2d Cir. 2019) ....................................................................................7

*Crystallex Internationall Corp. v. Bolivarian Republic of Venezuela*,
    2017 WL 6349729 (D.D.C. June 9, 2017) ............................................................9

*EM Ltd. v. Republic of Argentina*,
    2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) ....................................................11

*EM Ltd. v. Republic of Argentina*,
    389 F. App'x 38 (2d Cir. 2010) .........................................................................11, 12

*EM Ltd. v. Republic of Argentina*,
    695 F.3d 201 (2d Cir. 2012) ...........................................................................7, 9, 10

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
    150 F.3d 172 (2d Cir. 1998) ..................................................................................12

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006) ..................................................................................11

*GMA Accessories, Inc. v Elec. Wonderland, Inc.*,
    2012 WL 1933558 (S.D.N.Y. May 22, 2012) ........................................................13

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    313 F.3d 70 (2d Cir. 2002) ......................................................................................7

*Micula v. Government of Romania*,
    1:15-mc-107 (S.D.N.Y. Sept. 16, 2015) ..................................................................8

*Ned Chartering & Trading, Inc. v. Republic of Pakistan*,
    130 F. Supp. 2d 64 (D.D.C. 2001) ..........................................................................9

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    255 F.R.D. 98 (S.D.N.Y. 2008) ..............................................................................4

*Republic of Argentina v. NML Capital, Ltd.*,
    573 U.S. 134 (2014) ..........................................................................1, 5, 6, 7, 10, 14

*SAS Inst., Inc. v. World Programming, Ltd.*,
2018 WL 1144585 (E.D.N.C. Mar. 2, 2018) ........................................................14

*Science Applications International Corp. v. Hellenic Republic*,
2019 WL 1789641 (S.D.N.Y. Apr. 24, 2019).........................................................9

*Stati v. Republic of Kazakhstan*,
2024 WL 3442663 (S.D.N.Y. July 17, 2024) .................................................12, 14

*Universitas Educ., LLC v. Nova Grp., Inc.*,
2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) ...............................................................4

*Wye Oak Technology, Inc. v. Republic of Iraq*,
2023 WL 7112801 (D.D.C. Oct. 27, 2023) .............................................................8

## Statutes

28 U.S.C. § 1605(a)(6)......................................................................................................6

28 U.S.C. § 1605(g)(1)......................................................................................................6

28 U.S.C. § 1606................................................................................................................7

28 U.S.C. § 1609................................................................................................................6

28 U.S.C. § 1610(c) ..............................................................................................1, 5, 6, 8

## Treaties

ICSID Convention, art. 53(1)........................................................................................2, 3

## Other Authorities

*Corruption Probe Targets Spanish Ex-minister, A Sanchez Ally*, Barrons (Nov. 7,
2024), https://bit.ly/422us3i .................................................................................12

Joseph Wilson & Suman Naishadam, *What to know about the legal cases circling
Spain's prime minister that he calls a 'smear campaign'*, Associated Press,
https://bit.ly/3BKsTMM ......................................................................................12

Professor Nikos Lavranos, *Report on Compliance With Investment Treaty
Arbitration Awards 2024 (3rd Edition)*, https://bit.ly/4033Igf. ......................3, 13

## Rules

Fed. R. Civ. P. 45(c) .........................................................................................................4

Fed. R. Civ. P. 62(b) .........................................................................................................3

Fed. R. Civ. P. 69(a) .........................................................................................................4

## Treatises

9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.)......................................................................4

Respondent Blasket Renewable Investments, LLC ("Blasket") respectfully submits this opposition to Petitioner the Kingdom of Spain's ("Spain's") motion to quash the subpoenas, dated December 19, 2024, that were served on the Federal Reserve Bank of New York and The Clearing House Payments Company LLC (collectively, the "wire services").

## PRELIMINARY STATEMENT

Blasket holds a $36 million judgment against Spain, issued to enforce an arbitration award issued pursuant to the Energy Charter Treaty and the ICSID Convention. Spain has neither paid nor posted a supersedeas bond to stay execution of the judgment pending appeal, so Blasket issued subpoenas to the Federal Reserve Bank of New York and The Clearing House Payments Company LLC seeking information about Spain's assets.

Blasket is entitled to do so under the Federal Rules of Civil Procedure and Foreign Sovereign Immunities Act ("FSIA"). As the Supreme Court held nearly a decade ago, despite providing a foreign state's property limited immunity from execution, the Foreign Sovereign Immunities Act provides no immunity from discovery. *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). As relevant to these subpoenas, Spain is thus no different than any private judgment-debtor. Under Rules 69 and 45 of the Federal Rules of Civil Procedure, Blasket may thus seek information from third parties about Spain's assets, including its assets held in a different party's name and the assets of potential alter egos. The subpoenas at issue do just that.

Spain's objections are meritless. Spain's suggestion that its assets are "shielded by pre-judgment immunity" until Blasket obtains an order under 28 U.S.C. § 1610(c) is nonsense. Section 1610(c) immunizes Spain's assets from execution until a reasonable period of time has elapsed since the District Court for the District of Columbia entered judgment. It does not immunize Spain from discovery about those assets before that period of time has elapsed. Numerous cases have held that the FSIA permits discovery even into assets that are forever immune from attachment;

there is no statutory or practical reason to delay discovery until a court issues a 1610(c) order.  And in any event, this Court can recognize that a reasonable period of time has elapsed.

Spain's suggestion that the discovery sought is overbroad in light of the needs of the case is equally hollow.  Spain owes a $36 million judgment, which is easily large enough to justify discovery into Spain's assets in and out of the United States looking three years back.  And to the extent Spain thinks this judgment is too small to justify the discovery, it can solve that issue by paying.  Spain's motion to quash should be denied.

## BACKGROUND

Blasket's predecessor in interest, JGC Holdings Corporation ("JGC"), is a Japanese company that invested in renewable energy operations in Spain in reliance on financial incentives enacted by the Spanish government.  *See Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2024 WL 4298808, at *2 (D.D.C. Sept. 26, 2024).  When Spain retrenched on and eventually revoked those incentives, JGC commenced arbitration against Spain pursuant to the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention").  *Id.* at *3.  JGC alleged that Spain's revocations of its incentives violated its commitments under the Energy Charter Treaty—a multilateral treaty between Spain, Japan, and other nations—to protect foreign energy investments in Spain.  *Id.*  The arbitral tribunal agreed, and on November 9, 2021, it issued a €23,510,000 arbitral award in favor (the "Award").  *Id.*

As a party to the ICSID Convention since 1994, Spain has agreed that any arbitral award issued pursuant to the Convention is "binding on the parties" as soon as it is issued.  ICSID Convention, art. 53(1).  Yet Spain has nonetheless refused to pay the award.  On September 15, 2023, therefore, JGC filed a petition in the United States District Court for the District of Columbia to enforce the award.  *See Blasket Renewable Investments, LLC v. Kingdom of Spain*, No. 1:23-cv-2701 (D.D.C. Sept. 15, 2023) ("D.D.C. Dkt."), ECF No. 1.  Blasket later acquired title to the

arbitral award at issue and was substituted as petitioner. *See id.*, ECF No. 19.  On November 15, 2024, the court entered judgment in the amount of $36,099,289.31, plus postjudgment interest (the "Judgment").  *Id.*, ECF No. 28.  Spain has now appealed that Judgment, but has not posted a supersedeas bond to obtain a stay pending appeal.  *Id.*, ECF No. 29; *see* Fed. R. Civ. P. 62(b).

When the court issued the Judgment, it became the first U.S. district court to enforce an arbitral award against Spain.  But it is unlikely to be the last.  Spain is the world's leader in unpaid investment-treaty arbitration awards, owing $1.6 billion across 24 awards.  *See* Prof. Nikos Lavranos, *Report on Compliance With Investment Treaty Arbitration Awards 2024 (3rd Edition)*, at 5, https://bit.ly/4033Igf.  There are fourteen other enforcement petitions already pending in D.D.C.[1]  In some of those, the court has set briefing schedules to reach final judgment.[2]

---

[1] *Swiss Renewable Power Partners S.A.R.L. v. Kingdom of Spain*, No. 1:23-cv-512 (D.D.C. filed Feb. 24, 2023); *Baywa R.E. v. Kingdom of Spain*, No. 1:22-cv-2403 (D.D.C. filed Aug. 12, 2022); *RWE Renewables GMBH v. Kingdom of Spain*, No. 1:21-cv-03232 (D.D.C. filed Dec. 9, 2021); *AES Solar Energy Coöperatief U.A. v. Kingdom of Spain*, No. 1:21-cv-3249 (D.D.C. filed Dec. 10, 2021); *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 1:21-cv-2463 (D.D.C. filed Sept. 20, 2021); *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 1:20-cv-1708 (D.D.C. filed June 23, 2020); *Watkins Holdings S.R.L. et al v. Kingdom of Spain*, No. 1:20-cv-1081 (D.D.C. filed Apr. 24, 2020); *Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*, No. 1:20-cv-925 (D.D.C., transferred from S.D.N.Y. Apr. 7, 2020); *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. 1:20-cv-817 (D.D.C. filed Mar. 25, 2020); *RREEF Infrastructure (G.P.) Limited v. Kingdom of Spain*, No. 1:19-cv-3783 (D.D.C. filed Dec. 19, 2019); *9Ren Holding S.A.R.L. v. Kingdom of Spain*, No. 1:19-cv-01871 (D.D.C. filed June 25, 2019); *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 1:19-cv-1618 (D.D.C. filed June 3, 2019); *Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*, No. 1:18-cv-1753 (D.D.C. filed July 27, 2018); *Novenergia II – Energy and Environment (SCA) v. Kingdom of Spain*, No. 1:18-cv-1148 (D.D.C. filed May 16, 2018).

[2] *See, e.g.*, Min. Order Setting Summary Judgment Briefing Schedule, *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 1:20-cv-00817 (D.D.C. Dec. 19, 2024); Min. Order Setting Briefing Schedule, *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 1:22-cv-02403 (D.D.C. Dec. 23, 2024); Min. Order Granting Consent Motion to Set Summary Judgment Briefing Schedule, *9Ren Holding*, No. 1:19-cv-01871 (D.D.C. Dec. 26, 2024); Min. Order Granting Consent Motion for Extension of Time to Respond to Pet'rs' Renewed Mot. for Summary Judgment, *NextEra*, No. 1:19-cv-1618 (D.D.C. Dec. 30, 2024).

In light of Spain's ongoing refusal to pay the Award, and now the Judgment, Blasket has commenced postjudgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(2) into assets available to satisfy the Judgment.  To that end, Blasket issued subpoenas on December 19 to the Federal Reserve Bank of New York (the "Federal Reserve") and The Clearing House Payments Company LLC (the "Clearing House").  ECF Nos. 3-2, 3-3 (the "Subpoenas").  The Subpoenas sought information from both entities about Spain's transactions conducted through their interbank payment systems and any relevant information retained by the entities about Spain's accounts.  The Subpoenas defined Spain to include the Kingdom of Spain, the ministries of the Spanish government (identified in Appendix A of the subpoena), the heads of those ministries, and any other of Spain's agencies or instrumentalities, as defined in 28 U.S.C. § 1603(b).  *See* ECF No. 3-2, at 3, 9-10; ECF No. 3-3, at 3, 9-10.  Additionally, the definition included six commercial entities owned by the Government of Spain, on the theory that they may ultimately prove to be alter egos of Spain.  *See* ECF No. 3-2, at 3; ECF No. 3-3, at 3.

## LEGAL STANDARD

Rule 69(a)(2) provides that "[i]n aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person … as provided in these rules or by the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(2).  Rule 45 allows a party to issue a subpoena commanding a non-party's "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person [to whom the subpoena is issued] resides."  Fed. R. Civ. P. 45(c).  A party to litigation may move to quash a subpoena issued to a non-party under Rule 45(d) when the subpoena seeks information about the party's financial affairs.  "[T]he movant has the burden of persuasion on a motion to quash a subpoena."  9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D.

98, 108 (S.D.N.Y. 2008) ("A party contending that a subpoena should be quashed pursuant to Rule 45(c)(3)(A)(iv) must demonstrate that compliance with the subpoena would be unduly burdensome.").

## ARGUMENT

Blasket holds a binding federal judgment against Spain. Because Spain has neither paid the Judgment nor posted a supersedeas bond pending its appeal to the D.C. Circuit, Federal Rule of Civil Procedure 69(a)(2) allows Blasket to engage in postjudgment discovery. Spain's attempt to delay that discovery by claiming temporary immunity under the Foreign Sovereign Immunities Act is contrary to the Act's text and foreclosed by the Supreme Court's decision in *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). And notwithstanding Spain's objection to the Subpoenas' scope, the Subpoenas are reasonably calculated to reveal relevant information that will aid in enforcement of the judgment. There is thus no basis to quash or modify the Subpoenas. Spain's motion should be denied.

## I.    Blasket's Subpoenas Are Timely

Spain's first argument is that §1610(c) of the FSIA immunizes a foreign state from postjudgment discovery until a district court determines that a "reasonable period of time has elapsed following the entry of judgment." ECF No. 2 ("Spain Br."), at 4-5 (quoting 28 U.S.C. § 1610(c)). But the FSIA creates no such immunity—and even if it did, a "reasonable period of time" will have elapsed by the time this motion is briefed and argued.

**A.**    The FSIA grants foreign states only "two kinds of immunity": "jurisdictional immunity" and "execution immunity." *NML Cap.*, 573 U.S. at 142.

Jurisdictional immunity, which is governed by 28 U.S.C. §§ 1604 and 1605, protects foreign states from being sued in U.S. court unless an exception to immunity applies. But as the district court recognized in the underlying enforcement action, Spain does not and cannot invoke

jurisdictional immunity here because one of those exceptions—the "arbitration exception," *id.* § 1605(a)(6)—permits suits against foreign states to enforce an ICSID award. *Blasket*, 2024 WL 4298808, at *5-6.

Execution immunity, which is governed by 28 U.S.C. §§ 1609 through 1611, generally shields a foreign state's "property in the United States" from "attachment," "arrest," and "execution," again subject to enumerated exceptions. 28 U.S.C. § 1609. The FSIA provision Spain invokes here—§ 1610(c)—forms part of this immunity from execution. It governs the steps a court must take before "order[ing] … attachment and execution" of a foreign state's property "in aid of execution": "No [such] attachment or execution … shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c).

The issue here, by contrast, is not jurisdiction or execution. It is discovery. But as the Supreme Court recognized in *NML Capital*, there is "no third provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *NML Cap.*, 573 U.S. at 142. The FSIA mentions discovery only once—in § 1605(g)(1)—and that provision merely limits discovery *from the United States*, in *terrorism-related* cases, when the discovery request would interfere with a criminal investigation or national security. 28 U.S.C. § 1605(g)(1). And § 1610(c) says nothing about discovery—it merely addresses the prerequisites for "attachment and execution." 28 U.S.C. § 1610(c).

Because the FSIA was intended to dictate that "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state," *NML Cap.*, 573 U.S. at 141 (quotation marks omitted), its silence on discovery means it provides *no* protection from postjudgment discovery whatsoever. As the Second Circuit recognized in the decision that the

Supreme Court affirmed in *NML Capital*, a judgment creditor "need not satisfy the stringent requirements for attachment in order to simply receive information about [the foreign sovereign's] assets." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 209 (2d Cir. 2012). Indeed, under *NML Capital*, even "discovery of sovereign property that is potentially immune from attachment" is permitted by the FSIA, *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 17 (2d Cir. 2014), since that discovery may be necessary before a court can determine whether the property at issue actually is or is not immune, *NML Cap.*, 573 U.S. at 144-45. If Congress had intended for § 1610(c) to limit discovery, it easily could have said so. By instead mentioning only attachment and execution, Congress made clear that it did not limit discovery. *Cf. Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 111 (2d Cir. 2019) (under "the principle of expressio unius est exclusio alterius[,] … 'mention of one impliedly excludes others.'").

Given Spain's lack of any applicable FSIA immunity, the FSIA is clear that it must be treated "as a private individual under like circumstances," 28 U.S.C. § 1606, including for purposes of postjudgment discovery, *see Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina")*, 313 F.3d 70, 83 (2d Cir. 2002). To hold otherwise would create precisely the type of "penumbral 'discovery immunity'" that the Supreme Court refused to read into the FSIA in *NML Capital*, 573 U.S. at 142, 144.

Congress's decision to permit postjudgment discovery to proceed even while attachment and execution is stayed makes perfect sense. "FSIA plaintiffs" face "severe hurdles to enforcement of judgments" against recalcitrant foreign-state judgment debtors. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 271 (D.D.C. 2011). Discovering a foreign state's assets is only the first step, and it often takes much longer than the relatively short amount of time

courts generally find must elapse before authorizing the attachment or execution of a foreign state's property. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 2023 WL 7112801, at *4 (D.D.C. Oct. 27, 2023) ("[C]ourts have held that periods as short as six weeks were satisfactory."). Permitting judgment debtors to get a jump start on this arduous process through the less onerous step of discovery while deferring the more significant step of attachment and execution is entirely reasonable. Section 1610(c)'s text makes clear that Congress intended exactly that.

Spain cites no relevant authority for its contrary position. Most of the cases it cites simply recite irrelevant background principles about its presumptive immunity from "attachment and execution." Spain Br. 4. The sole exception is the transcript of a conference in *Micula v. Government of Romania*, 1:15-mc-107 (S.D.N.Y. Sept. 16, 2015), ECF No. 83 ("*Micula* Tr."), which Spain characterizes as holding that "post-judgment discovery … is unavailable" before a § 1610(c) order is issued. Spain Br. 5. But *Micula* did not make any such holding. Instead, the Court simply granted a judgment creditor's request for "permission to begin identifying Romanian assets that may be subject to attachment or execution in this jurisdiction." *Micula* Tr. at 4:5-7 (describing the request); *id.* at 6:13-15 (granting the request). The Court offered no authority or reasoning requiring a § 1610(c) order before discovery may begin, and the issue does not appear to have been briefed or disputed by the parties. Spain thus cites no reasoned decision adopting its position, much less any decision in which discovery was *denied* because a sufficient time period had not elapsed after entry of judgment. This Court should not upend postjudgment discovery against foreign states by imposing an additional barrier with no basis in the FSIA's text.

**B.** Even if Spain were correct that postjudgment discovery must wait until a "reasonable period of time has elapsed" after entry of judgment, 28 U.S.C. § 1610(c), that supposed requirement would be no barrier because a reasonable time has undoubtedly elapsed. Judgment

was entered on November 15, 2024. *See* Judgment, *Blasket*, D.D.C. Dkt., ECF No. 28. By the time this Court holds oral argument on Spain's motion to quash—currently scheduled for February 26, 2025, ECF No. 14, it will be 103 days after entry of judgment. That is in line with the amount of time courts generally require to elapse before issuing a Section 1610(c) order. *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2017 WL 6349729, at *1 (D.D.C. June 9, 2017) (60 days); *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (six weeks). Given that Spain has been legally obligated to pay the Award since November 2021, 103 days is more than a reasonable period of time to permit it to pay.

Nor is there any basis for Spain's assertion that this Court is not authorized to make that determination, and that instead, only the court that issued the judgment or where the judgment has been duly registered may do so. Spain Br. 4. Spain relies entirely on *Science Applications International Corp. v. Hellenic Republic*, 2019 WL 1789641 (S.D.N.Y. Apr. 24, 2019). But that case merely illustrates that a court where a judgment has been registered may issue a § 1610(c) order recognizing that a reasonable period of time has elapsed. *Id.* at *4. It nowhere suggests that another court may *not* issue such an order. Nothing in § 1610(c)'s text limits which court may make such a determination. And if Spain were somehow correct that such a finding is a predicate to enforcement of postjudgment subpoenas seeking discovery as to a foreign state's assets, it would make no sense for Congress to bar the court responsible for enforcing those subpoenas from making that finding. This Court should therefore reject Spain's arbitrary rule, and either hold that a § 1610(c) order is not required, or grant such an order itself.

## II.    The Subpoenas Are Well Within The Permissible Scope Of Post-Judgment Discovery

Spain's argument that the Subpoenas are overly broad fares no better. "[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM*

*Ltd.*, 695 F.3d at 207.  Indeed, by its nature, post-judgment discovery must be broad because Blasket "*does not yet know* what property [Spain] has." *NML Cap.*, 573 U.S. at 144.

The principal "constrain[t]" under Rule 69(a)(2) is that the discovery "must be calculated to assist in collecting on a judgment." *EM Ltd.*, 695 F.3d at 207.  The Subpoenas are so calculated.  They seek information regarding Spain's transactions on the Fedwire Funds Service and the Clearing House Interbank Payments System ("CHIPS")—two of the largest settlement fund transfer systems.  *See* ECF No. 3-2, at 6-8; ECF No. 3-3, at 6-8.  The subpoenas also seek any information regarding Spain's financial accounts known to the wire services.  Information about Spain's financial accounts and information about wire transfers which may lead to the discovery of financial accounts are calculated to assist Blasket in identifying Spain's assets.

Despite that broad standard, Spain contends that the subpoenas should be quashed or modified because they are excessively broad.  Spain Br. 6.  Specifically, Spain contends (1) that the subpoenas define "Spain" too broadly and (2) that the geographic and temporal scope of the subpoenas is too broad in light of the size of the judgment.  Neither objection succeeds.

A.      Spain's first overbreadth argument is that the Subpoenas cannot seek information about the assets of Spain's agencies or instrumentalities of its governmental officials.  *See* Spain Br. at 6-8.  The Subpoenas seek information about the accounts and wire transactions of the ministries of Spain's government, the ministers running those ministries, certain commercial entities owned by Spain, and any other of Spain's agencies and instrumentalities.  *See* ECF No. 3-2, at 3, 9-10; ECF No. 3-3, at 3, 9-10.  Information about those entities' financial accounts and information about wire transfers that may lead to the discovery of their accounts is well within the bounds of Rules 69 and 45 because it is "calculated to assist in collecting on a judgment."  *EM Ltd.*, 695 F.3d at 207.

At the threshold, Spain does not contest that postjudgment discovery may address the assets of the Spanish ministries, such as the Office of the Prime Minister of Spain and Spain's Ministry of Finance. *See* ECF No. 3-2, at 9-10; ECF No. 3-3, at 9-10. When an arm of the state's "core functions … are predominantly governmental," as opposed to "commercial," that entity is considered "as the foreign state itself," and not a "separate 'agency or instrumentality.'" *Garb v. Republic of Poland*, 440 F.3d 579, 591 & n.12 (2d Cir. 2006) (quotation marks omitted). Thus, while the property of a foreign state's instrumentality presumptively cannot be attached to satisfy a judgment against the foreign state—unless it is an alter ego, as discussed *infra*—the property of a political subdivision of a foreign state can be attached because a political subdivision is not legally separate from the foreign state. *See EM Ltd. v. Republic of Argentina*, 389 F. App'x 38, 43 (2d Cir. 2010) (explaining that the court did not have to decide whether trust funds benefitting Argentina had political or commercial functions because any presumption of separateness that might have applied was overcome by Argentina's control over them). Thus, discovery of the assets of the ministries listed in Appendix A is calculated to assist in collecting on the judgment because their assets are Spain's assets.

Discovery into assets held by the Ministers running those ministries is also calculated to lead to the discovery of attachable assets. The heads of Spain's ministries may very well hold those ministries' property in their official capacities. For example, this court previously affirmed attachment of an account owned by the Argentine Ministry of Science, Technology, and Productive Innovation, even though the account was held in the name of an Argentine official. *See EM Ltd. v. Republic of Argentina*, 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009), *aff'd in relevant part*, 680 F.3d 254, 256 (2d Cir. 2012). The Subpoenas are aimed at finding out if the same is true here. In addition, there have been a number of recent accusations of official corruption among

Spanish officials.  *See, e.g.*, *Corruption Probe Targets Spanish Ex-minister, A Sanchez Ally*, Barrons (Nov. 7, 2024), https://bit.ly/422us3i (discussing investigation into former transport minister for "syphoning off funds and misusing his position"); Joseph Wilson & Suman Naishadham, *What to know about the legal cases circling Spain's prime minister that he calls a 'smear campaign'*, Associated Press, https://bit.ly/3BKsTMM (discussing investigations into Spanish Prime Minister's wife and brother).  If Spanish ministers have embezzled assets that properly belong to Spain, they may be attachable to satisfy Spain's debts.

The Subpoenas also inquire about the accounts and wire transactions of Sociedad Estatal de Participaciones Industriales ("SEPI"); Instituto Cervantes; RENFE Operadora or RENFE of America LLC; Ingeniería y Economía del Transporte, S.M.E. M.P., S.A. ("INECO"); ENAIRE; and Paradores de Turismo de España, S.A, as well as any other Spanish agencies and instrumentalities of which the wire services are aware.  ECF No. 3-2, at 3; ECF No. 3-3, at 3. While those entities may be facially separate from Spain, discovery into their assets is still reasonably calculated to lead to the discovery of attachable assets, for two independent reasons.

*First*, those entities may turn out to be Spain's alter egos, in which case the presumption of separate status could be overcome, and their assets could be attached to satisfy the judgment. That is why the Second Circuit has authorized discovery into potential alter egos' assets.  *See, e.g.*, *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 177 (2d Cir. 1998); *EM Ltd.*, 389 F. App'x at 43 (affirming order attaching assets in trust funds because Argentina's control over them overcame any presumption of separateness).  *Second*, "[e]ven if an entity is not an alter ego (and thus is not liable for [Spain's] debts), it may nevertheless hold attachable assets on behalf of [Spain]," or at least "information about [Spain's] assets."  *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014); *see also Stati v. Republic of Kazakhstan*, 2024

WL 3442663, at *5 (S.D.N.Y. July 17, 2024) ("[T]he fact that some of Kazakhstan's assets may enjoy heightened immunity from *execution*—like those held in the name of its national bank … —does not make *discovery* into those assets necessarily irrelevant.").  This too justifies discovery into their assets.

**B.**     Spain also complains that the Subpoenas' geographic and temporal scope is overbroad in light of the needs of the case.  *See* Spain Br. 8-10.  But the $36 million unpaid Judgment easily justifies the Subpoenas' scope, especially in context.

$36 million is a large judgment relative to other cases (if not to the amount of Spain's assets).  This Court has allowed similar discovery in cases involving much smaller judgments. *See, e.g.*, *GMA Accessories, Inc. v Elec. Wonderland, Inc.*, 2012 WL 1933558, at *2, *9 (S.D.N.Y. May 22, 2012) (granting motion to compel for discovery of business tax returns, credit card transactions, and bank records for seven-year period in $27,659.42 judgment).  Indeed, Spain recognizes that the Judgment is large, when convenient to it, by arguing that JGC's inquiry about financial transactions in excess of $500 is "far too small to be reasonable relative to a judgment of more than $36 million."  Spain Br. 10.  Spain cannot have it both ways.

The context in which the Judgment was issued further justifies the scope of the requests. As explained, *supra* at 3, Blasket is not Spain's only creditor.  Spain owes $1.6 billion across 24 awards, many of which are in the process of being converted into federal court judgments.  *See* Prof. Nikos Lavranos, *Report on Compliance With Investment Treaty Arbitration Awards 2024 (3rd Edition)*, at 5, https://bit.ly/4033Igf.  Because multiple creditors will be seeking to execute on Spain's assets, to fully satisfy their judgments, each creditor's search will likely have to be broader than the size of the individual judgment might indicate.

Further, if Spain were correct that the Judgment is small enough that "information limited to the United States could suffice" to satisfy it, that would only underscore why Spain can easily avoid any discovery burdens by paying it, or at least by posting a supersedeas bond pending appeal. Spain Br. 10.   This Court should not entertain Spain's inconsistent complaints about the proportionality of the discovery relative to the size of the Judgment when it refuses to pay an unstayed judgment that, as Spain intimates, it can afford to pay with information limited to the United States.

Regardless of the Judgment's size, moreover, the geographic and temporal scope of Blasket's requests is reasonable.  Spain complains about the Subpoenas' worldwide scope, but in *NML Capital*, the Supreme Court held that federal courts may act "as a 'clearing house for information'" in a judgment-creditor's "efforts to find and attach [a foreign sovereign's] assets." 573 U.S. at 138.  Since then, this Court has applied *NML Capital* to hold that such subpoenas— including those seeking information *worldwide*—are reasonable within the bounds of seeking information about assets that may be subject to execution.  *See, e.g.*, *Stati*, 2024 WL 3442663, at *7.  Similarly, Blasket's Subpoenas are reasonable in that they seek information worldwide about Spain's assets that may be subject to execution.

Spain's complaint that the temporal scope of the Subpoenas is "excessive" similarly lacks merit.  Spain Br. 10.  Blasket seeks information dating to the date of the ICSID award— approximately three years and two months before the Subpoenas were issued.  That three-year period starting when Spain first became legally obligated to pay is a reasonable one.  *See Stati*, 2024 WL 3442663, at *6 (holding that an eight-year period was reasonable); *SAS Inst., Inc. v. World Programming, Ltd.*, 2018 WL 1144585, at *5 (E.D.N.C. Mar. 2, 2018) (holding that a request for transactional documents dating back three years and two months before the court's

decision were appropriately calculated to lead to the discovery of assets).  Perhaps because the three-year period is reasonable, Spain suggests that instead Blasket may not seek information from before November 15, 2024, when it obtained judgment, or in the alternative, when a stay of the case was lifted on November 23, 2022, or as an even further alternative, when JGC obtains a section 1610(c) order.  Spain Br. 10.  But Spain cites no authority suggesting that assets predating any of those arbitrarily selected starting points is impermissible.  The only temporal constraint is that the discovery must be reasonably calculated to lead to the discovery of assets and may not be unduly burdensome.  This Court should reject Spain's attempt to create arbitrary starting points.

**CONCLUSION**

For the foregoing reasons, the Court should deny Spain's motion to quash.

Dated: January 16, 2025                                 Respectfully submitted,


                                                        /s/ *Matthew D. McGill*
                                                        Matthew D. McGill
                                                        mmcgill@gibsondunn.com
                                                        Matthew S. Rozen (*pro hac vice forthcoming*)
                                                        mrozen@gibsondunn.com
                                                        GIBSON, DUNN & CRUTCHER LLP
                                                        1700 M Street, N.W.
                                                        Washington, DC 20036
                                                        Telephone: 202.955.8500
                                                        Facsimile: 202.467.0539

                                                        *Attorneys for Blasket Renewable Investments LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law compiles with Section 2.B.i of Judge Ramos'

Individual Practices because it is less than 25 pages and was prepared in 12-point, Times New

Roman font.

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, I caused a true and correct copy of the foregoing

Notice of Supplemental Authority to be filed with the Clerk for the U.S. District Court for the

Southern District of New York through the ECF system.  Participants in the case who are registered

ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.




*/s/ Matthew D. McGill*
Matthew D. McGill